[No. B115772. Second Dist., Div. Six. June 29, 1998.]

HOWARD LEASURE et al., Plaintiffs and Appellants, v.
MSI INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Richards & Richards and David L. Richards for Plaintiffs and Appellants.

Larson & Burnham and Gary R. Selvin for Defendant and Respondent.

OPINION

**GILBERT, J.**—A provision in an insurance policy states that fraud committed by the insured will void the policy. The insureds receive a check from their insurance company for damage from vandalism to their mobilehome. The check is payable to the insureds and to the lienholders of the mobilehome. The insureds sign the name of the lienholders on the check.

Here we hold that the insureds' policy of insurance did not become void because the insureds' acts had nothing to do with the insurance company's investigation to determine its obligations under the policy.

Howard and Sally Leasure appeal a summary judgment in favor of MSI Insurance Company (MSI). We reverse.

## FACTS

On July 26, 1996, Howard and Sally Leasure brought an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and other causes of action against MSI. The Leasures alleged that MSI wrongfully failed to pay an insurance claim that they submitted for vandalism of their mobilehome and personal property. MSI moved for summary judgment, contending that the Leasures committed fraud under their mobilehome insurance policy and Insurance Code section 2071, by forging the signatures of lienholders on three checks issued to pay prior weather-related insurance claims.[1] These wrongful acts, MSI asserted, voided the Leasures' policy. Evidence submitted in support of and in opposition to the summary judgment motion established this:

The Leasures resided in a mobilehome at 2967 Cruise Circle in Paso Robles. In March 1995, December 1995, and January 1996, the mobilehome suffered damage from a mud slide and wind and rain damage. In December 1995, the roof and siding blew off and water entered the home. During the next several months, water from frequent rainstorms entered the home and damaged it further. Until the Leasures received a check for $4,541.26 from MSI on January 31, 1996, they were without funds to make the roof watertight.

The $4,541.26 check was payable to Howard and Sally Leasure and lienholders Lincoln Trust Company and Rex and Kathryn Cahhal.[2] Howard Leasure telephoned MSI on February 2, 1996, and informed a claims representative that he was unable to obtain the signatures of the lienholders, in part because the Cahhals lived in rural Wyoming and collected mail only once a week. The insurance company's file notes confirmed that "I[nsured] ph[oned] . . . can't get draft signed - explained a lienholder."

Leasure believed, based upon his telephone conversation with the claims representative, that the additional payees were "a formality" to ensure that the home was repaired with the insurance funds. Leasure then directed his wife "to scribble" signatures on the check and deposit it in their business bank account. Mrs. Leasure did so. Howard Leasure believed the lienholders' endorsements were "no big deal."

The Leasures used the insurance funds to purchase roof and siding materials and to repair the home. The cost of the roof and siding materials

---

[1] All statutory references are to the Insurance Code. Section 2071 provides a standard form fire insurance policy.

[2] At times the records and briefs refer to Rex and Kathryn *Cannal.*

was approximately $3,200 and the remainder of the funds was spent to put those repairs in place.

Within a month, the Leasures discovered additional water damage to kitchen cabinets, floors, and a computer. They informed MSI and received a second check for $2,608 on February 29, 1996. This check was also payable to the Leasures and lienholders Lincoln Trust Company and Rex and Kathryn Cahhal. Howard Leasure endorsed the check and signed the names of the lienholders. He admitted that he had not spoken with the lienholders and did not have their permission to endorse the check.

The claims representative's notes indicated that around February 9, 1996, the Leasures "mov[ed] out of [the] trailer to refurbish." Thereafter, during March or April 1996, the home received extensive vandalism. Howard Leasure described the vandalism: "[G]asoline was poured throughout my mobile home and all my personal effects, many of my pets and fish were killed or removed, my furniture was destroyed and there was a great deal of paint and graffiti throughout my home."

The Leasures submitted another claim to MSI for the vandalism damages. Prior to the claim MSI did not cancel the policy. MSI refused to pay the claim, asserting that the Leasures' fraudulent endorsement of the lienholders' signatures to the two insurance checks and a third, earlier check, voided the Leasures' policy. MSI relied upon this policy provision: "2. Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an insured has: [a] intentionally concealed or misrepresented any material fact or circumstance; [b] engaged in fraudulent conduct; or [c] made false statements; relating to this insurance." MSI also relied upon section 2071.

The trial court granted summary judgment, concluding as a matter of law that signing the lienholders' signatures, without their knowledge or approval, voided the Leasures' insurance policy.

The Leasures appeal and contend the trial court improperly granted summary judgment.

## DISCUSSION

The Leasures argue that triable factual issues exist concerning their intent to defraud MSI. (*Cummings* v. *Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1417 [249 Cal.Rptr. 568] [materiality of misrepresentation and insured's intent to defraud are factual questions].) They also contend that section 2071 and the fraud provisions of their insurance policy concern an

insured submitting false claims to the insurer, not the factual circumstances here. The Leasures add that MSI is estopped to deny the vandalism claim, apparently because the claims representative implied to Howard Leasure that the lienholders' signatures were "a formality."

MSI responds, in part, that the Leasures violated the literal terms of the fraud provisions of their policy and section 2071.

Section 2071 provides a standard form of fire insurance policy. The standard form provision regarding fraud by the insured is similar to the provisions in the Leasures' policy and provides: "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

■ A fraud and concealment clause in an insurance policy generally voids the policy upon the insured's attempts to deceive the insurer. (*Cummings* v. *Fire Ins. Exchange, supra*, 202 Cal.App.3d 1407, 1414-1415, fn. 7.) Deceit may involve false representations to obtain insurance coverage or to obtain benefits after a claimed loss. (*Menk* v. *Home Insurance Co.* (1888) 76 Cal. 50, 51-53 [14 P. 837] [misrepresentations in policy application concerning use of the property]; *Coca Cola Bottling Co.* v. *Columbia Casualty Ins. Co.* (1992) 11 Cal.App.4th 1176, 1187-1189 and fn. 4 [14 Cal.Rptr.2d 643] [discussing general rules concerning misrepresentations on policy applications]; *Cummings* v. *Fire Ins. Exchange, supra*, 202 Cal.App.3d 1407 [insured falsely claimed unknown persons vandalized home]; *Singleton* v. *Hartford Fire Ins. Co.* (1930) 105 Cal.App. 320, 327 [287 P. 529] [insured set fire to his property and submitted false claims concerning value of property destroyed].) The validity of an insurance contract, however, is not affected by concealment or misrepresentations that do not relate to material matters. (*Olson* v. *Standard Marine Ins. Co.* (1952) 109 Cal.App.2d 130, 137 [240 P.2d 379] [insurer could not deny claim under jewelry and fur policy because insured had prostitution conviction]; *Cummings* v. *Fire Ins. Exchange, supra*, 202 Cal.App.3d 1407, 1416-1417 [a material representation is one relevant to the insurer's investigation of claim].)

■ As a matter of law, the Leasures' acts of signing the lienholders' signatures on checks issued after MSI investigated, approved, and paid the claims, do not void the insurance policy. The false representations that the lienholders endorsed the checks are not material representations because they do not relate to MSI's investigation to determine its obligations under the policy. (*Cummings* v. *Fire Ins. Exchange, supra*, 202 Cal.App.3d 1407,

1416-1417.) Moreover, we interpret the policy provisions as a matter of law to exclude fraudulent conduct by the insured that does not directly concern the policy and that occurs after claims are approved and paid.

MSI relies upon *Cummings* v. *Fire Ins. Exchange, supra,* 202 Cal.App.3d 1407, but it is factually different. In *Cummings*, the insured filed a false property insurance claim, stating that her home had been vandalized by unknown persons in her absence. Neighbors informed the insurer, however, that plaintiff's son damaged her home in her presence during an argument. Here the Leasures' misrepresentations do not concern the factual circumstances underlying their vandalism claim.

In the event MSI has made payment to any of the lienholders, it may be entitled to a setoff from the Leasures. This evidence is not in the appellate record, however, and we express no opinion on the matter.

The judgment is reversed. Respondent shall bear costs on appeal.

Stone (S. J.), P. J., and Yegan, J., concurred.